Felix Twidwell **ADAMS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 19926.

United States Court of Appeals Fifth Circuit.

Jan. 3, 1963.

---

Myron M. Sheinfeld, Houston, Tex., for appellant.

William M. Schultz, Asst. U. S. Atty., Houston, Tex., Woodrow Seals, U. S. Atty., James R. Gough, Asst. U. S. Atty., for appellee.

Before HUTCHESON, WISDOM and GEWIN, Circuit Judges.

JOSEPH C. HUTCHESON, Jr., Circuit Judge.

Appellant was convicted under a three-count indictment charging mail fraud, in violation of 18 U.S.C. § 1341.[1] The in-

---

1. In pertinent part, Sec. 1341 provides as follows:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository

dictment alleged that Adams willfully and knowingly devised, and intended to devise, a scheme and artifice to defraud the Gulf Oil Company, one William Magie, and various Gulf distributors, who could be induced to extend credit upon Magie's Gulf credit card, and to obtain money and property from them by means of false and fraudulent pretenses and representations, known to Adams to be false, and that he caused various sales slips to be sent and delivered by the Post Office Department to Gulf Oil Company in Houston, Texas. The evidence showed that Adams obtained gasoline and other products from various Gulf distributors by the use of a credit card issued by Gulf to Magie, without the permission or authorization of Magie. Using that credit card for several months, appellant made some two hundred purchases from Gulf distributors in several states, in the total amount of $2953.55.[2] Magie testified that he was unaware that the credit card was missing until notified by mail of purchases with it.

Appellant contends that the trial court erred in denying his motions to dismiss the indictment, for judgment of acquittal, and in arrest of judgment. The thrust of his argument is that the indictment failed to allege, and the evidence failed to establish, that the use of the mails was in execution of the fraudulent scheme, if any.

In support of his argument that the use of the mails was, in this case, only incidental and collateral to the fraudulent scheme, rather than in execution or furtherance of it, appellant relies principally upon Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944), and Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960).

In Kann, various officers of a corporation organized another corporation, which served as a conduit through which the profits of the former were diverted to the officers. Various checks were drawn by the latter corporation in favor of the officers, and the clearing of those checks through the mails formed the basis of the alleged violation of the statute. Pointing out that in each case the officer-payee had received the money irrevocably prior to any mailing, the court stated that it was immaterial to the officers' scheme how the paying banks would collect on the checks. Therefore, the subsequent use of the mails was merely "incidental and collateral" to the scheme and not a part of it.

In Parr, three of the counts against two of the petitioners were based upon the fact that they used the gasoline credit card of a school district, on isolated occasions, to obtain gasoline for their personal use. The evidence showed that they, in conjunction with other of the petitioners, were in control of the school district. The mailings complained of were two invoices sent by the oil company to the district and the district's check mailed back in payment.

Those two cases cannot be taken as establishing the proposition that once a defendant has obtained that which he set out to obtain through fraudulent means, no *subsequent* mailing can form the basis of a prosecution under section 1341.[3] Therefore, the fact that in the present case the mailing of the sales slip occurred only after each sale had been made, that is, after the appellant had received the goods involved in each transaction, does not in itself preclude prosecution under Sec. 1341. That is particularly true when we bear in mind that

---

for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, * * * or knowingly causes to be delivered by mail according to the direction thereon, * * * any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both." 18 U.S.C. § 1341.

2. The various sales slips showed the sales as having been made to Magie, but received by F. T. Adams.

3. See United States v. Sampson, 1962, 83 S.Ct. 173; Clark v. United States, 93 U.S.App.D.C. 61, 208 F.2d 840, cert. denied, 346 U.S. 865, 74 S.Ct. 105, 98 L. Ed. 376 (1953) ; United States v. Riedel, 7th Cir., 1940, 126 F.2d 81.

all of the various sales involved were but part of one unitary scheme, and that numerous mailings occurred before the scheme, taken as a whole, was consummated.

The necessary element, that the mailing be "in execution of" the scheme, is present if the use of the mails is only an incident to a material element of the scheme,[4] and if the scheme reasonably contemplated the use of the mails.[5] In our opinion, the important question is whether the use of the mails was significantly related to those operative facts making the fraud possible or constituting the fraud. In the present case, the essence of appellant's fraudulent scheme was the utilization of the practice of Gulf distributors to extend credit on the faith of Gulf credit cards. Were it not for that practice, appellant's scheme could not, of course, have existed. Appellant violated Sec. 1341, because the practice of extending credit was inseparably connected with the use of the mails to forward the sales slips to Gulf Oil Company.[6] The fraudulent scheme was possible only because Gulf distributors extended credit, but extension of credit presupposed that the distributors would use the mails to forward the slips to Gulf for ultimate presentation to the card-holders. Appellant's scheme reasonably contemplated the utilization of a commercial practice which, taken in its entirety, embraced the use of the mails; and, at the very least, therefore, the use of the mails to forward the sales slips was an incident to a material part of the scheme, viz., the extension of credit.

In neither Parr nor Kann, however, did the operative facts making the fraud possible or constituting the fraud involve the use of the mails. In Parr, the essence of the fraud lay in the abuse of the petitioners' positions in the school district; in Kann, it lay in an abuse of position by corporate officials. The use of the mails was not related to the essential elements of the fraudulent scheme in either case.[7]

The conviction must be affirmed for another reason. The indictment alleged, and the evidence established, in our opinion, that appellant devised a scheme to defraud, not only the various Gulf distributors, but also the Gulf Oil Company and Magie. Appellant could not have intended to defraud either Gulf or Magie except by having the sales slips transmitted in the usual course by mail to Gulf for ultimate presentation to, and payment by Magie,[8] and the scheme reasonably contemplated that such would be done.

Finally, the conviction must be affirmed because the use of the mails to forward the sales slips occasioned a delay in the detection of appellant's scheme, and that delay permitted the appellant to expand the scope of his operations. Thus, when the scheme is viewed in its entirety, it is obvious that the use of the mails constituted a part of it.[9]

Appellant further complains that the government failed to prove fraud, because he signed his own name to the sales receipts. The fraud lay in the knowing misreprsentation that he was authorized to use Magie's credit card, regardless of how he signed the slips. Appellant contends that, in general, the evidence is insufficient to support the

4. See Pereira v. United States, 1954, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435.

5. Hart v. United States, 5th Cir., 1940, 112 F.2d 128.

6. See United States v. Lowe, 7th Cir., 1940, 115 F.2d 596, cert. denied, 311 U.S. 717, 61 S.Ct. 441, 85 L.Ed. 466 (1941)..

7. Similarly, in Stapp v. United States, 5th Cir., 1941, 120 F.2d 898, the essence of

the fraud was the misrepresentations, to which the mailings were unrelated.

8. See Bauman v. United States, 5th Cir., 1946, 156 F.2d 534, 535.

9. See Kann v. United States, 1944, 323 U.S. 88, 94–95, 65 S.Ct. 148, 89 L.Ed. 88; Bauman v. United States, supra note 8, 156 F.2d at p. 537.

conviction. There is no merit in that contention.

Having considered all of appellant's contentions, we are of the opinion that none of them warrants reversal, and the judgment of the court below is accordingly

Affirmed.