Harriette BANNISTER, Charles J. Crosby and W. C. Neal, Appellants,

v.

UNITED STATES of America, Appellee.

No. 23351.

United States Court of Appeals Fifth Circuit.

June 28, 1967.

Rehearing Denied Aug. 18, 1967.

Albert Datz, Jacksonville, Fla., for appellants, Crosby & Bannister.

Ernest D. Jackson, Sr., Samuel S. Jacobson, Jacksonville, Fla., for appellant, Neal.

James W. Matthews, Edward A. Kaufman, Asst. U. S. Attys., William A. Meadows, Jr., U. S. Atty., Miami, Fla., for appellee.

Before MARIS,* BROWN and THORNBERRY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The appellants Bannister, Crosby and Neal were convicted by a jury under an indictment charging two counts of mail fraud, 18 U.S.C.A. § 1341, and one

* Of the Third Circuit, sitting by designation.

count of conspiracy to violate the mail fraud statute, 18 U.S.C.A. § 371.[1] Of the several errors asserted on this appeal, only two warrant comment—whether the evidence established that there had been use of the mails within the meaning of § 1341, and whether the District Court erred in refusing to allow Crosby or his counsel access to Crosby's pre-sentence report. We find no error and affirm.

■ The substance of the offenses charged in the indictment was the use of the mails in a scheme to defraud insurance companies of proceeds under life insurance policies by false and fraudulent representations. Crosby and Neal were, during the period in question, employees of Sowell Funeral Home located in Jacksonville, Florida. The evidence we summarize briefly in the light of what the jury was entitled to infer. The fraudulent scheme consisted of either submitting or inducing the submission of applications for life insurance on various named persons unrelated to appellants and in whom the appellants otherwise had no insurable interest. Premium payments on these policies were made by Crosby and Neal, apparently from funds in the Sowell Funeral Home accounts. On at least two occasions, proofs of death and insurance claim forms were knowingly submitted on deceased persons who were known not to be the persons named in the insurance policies. On another occasion, the application for insurance, prepared from information provided by Crosby, contained misrepresentations regarding the age and physical condition of the prospective insured. Bannister, a student at Edward Waters College in Jacksonville and frequent visitor to the funeral home, was named as the beneficiary in this policy and submitted the signed proofs of death to the in-

surer to claim the policy proceeds. Although designated in the application and policy as the niece of the insured, the testimony other than that of Bannister herself contradicted such relationship. The beneficiaries named in the policies would, after the claim for proceeds had been filed, assign the proceeds to the funeral home. The evidence, although refuted by appellants who took the stand in their own behalf, is clearly sufficient to support the jury finding that Bannister, Crosby and Neal were all active participants in the fraudulent scheme.

■ The appellants contend that the statutory requirement that there be a use of the mails "in execution of" the scheme has not been satisfied in this case. The mailings alleged in the indictments in support of the two substantive offenses included the application for an insurance policy on the life of Irene Sanders, and the claim and proofs of death signed by Bannister following Irene Sanders' death. The record shows that all negotiations and discussions relating to the application for insurance were conducted at the funeral home between the appellants and the local agent of the Insurer.[2] The completed application was delivered by hand to him at that time, as were all subsequent premium payments on the Sanders' policy. After the death of Irene Sanders, the claim and proofs of death were also delivered by hand to the agent. The mailings involved therefore were confined to the interoffice communications requesting approval of the application and payment of the claim between the Jacksonville agency and the home office in New York. On these facts appellants urge that no use of the mails attributable to them occurred in connection with these items. The appellants disclaim any knowledge or anticipation that such mailings were neces-

1. Bannister was sentenced on each of the counts to five years probation, the sentences to run concurrently. Neal received a sentence of 18 months, 6 months imprisonment with the remainder suspended, and five years probation on each of the counts, concurrent. Crosby received con-

secutive five year sentences on the two substantive mail fraud counts, and five years on the conspiracy count to run concurrently with the sentence imposed on the second substantive count.

2. Manhattan Life Insurance Company, with home offices in New York.

sary to acquire either the policy or its proceeds, and urge alternatively that such interoffice mailings are not within the contemplation or proscription of § 1341.

■ It is now, and has been for years, clear that the mailing element of the offense is satisfied if the use of the mails is an incident to a material element of the scheme, Pereira v. United States, 1954, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435, and if the scheme reasonably contemplated a use of the mails, Adams v. United States, 5 Cir., 1963, 312 F.2d 137; Glenn v. United States, 5 Cir., 1962, 303 F.2d 536. In *Pereira* the Court held that "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." 347 U.S. at 8–9, 74 S.Ct. at 363. This Court was confronted with a problem similar to the one here in Adams v. United States, supra, involving a fraudulent credit card scheme:

> "The fraudulent scheme was possible only because Gulf distributors extended credit, but extension of credit presupposed that the distributors would use the mails to forward the slips to Gulf for ultimate presentation to the card-holders. *Appellant's scheme reasonably contemplated the utilization of a commercial practice which, taken in its entirety, embraced the use of the mails; * * *.*" [Emphasis added.]

312 F.2d at 140.

And so it is here. The mailings in *Adams* are substantially analogous to the interoffice communications here involved. The appellants knew they were dealing with a local agent of a specified life insurance company. The claim, proof of death and related forms all expressly recited that they were prepared for submission to the home office of the Insurer in New York.[3] From this evidence, the jury could conclude that the parties reasonably contemplated that use of the mails would be required as an integral part of the scheme.

■ The appellants' alternative assertion, that the mailings occurred subsequent to any misrepresentations they may have made to the Insurer and therefore were not incident to the execution of any essential part of the scheme but rather after the scheme had been fully executed, Kann v. United States, 1944, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88, 157 A.L.R. 406; Parr v. United States, 1960, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277, is patently without merit. This merely cleared the first hurdle in the inception of the scheme. The fulfillment of the fraud—acquisition of the proceeds—yet remained.

■ Appellants concede that each mailing in execution of an alleged scheme constitutes a separate offense under the statute, Milam v. United States, 5 Cir., 1963, 322 F.2d 104, even though the mailings may all relate to one contemplated fraud. Since we find that the convictions and sentences on the substantive mail fraud counts (see note 1, supra) are valid, we need not consider the validity of the concurrent sentences imposed on the conspiracy count.[4] United States v. Tenenbaum, 7 Cir., 1964, 327 F.2d 210.

■ Crosby asserts that the District Court erred in refusing to allow either Crosby or his counsel to examine his presentence report. He argues that the severity of his sentence in contrast to those of his co-defendants indicates that

---

3. The "Proofs of Death" form signed by Bannister carries the heading "Submitted to the Manhattan Life Insurance Company of New York, 120 West 57th Street, New York 19, N.Y.," and further directs that the "*Company* reserves the right to require or to obtain further information should it be deemed necessary." [Emphasis added.] Neal, a some-time insur-ance agent, can hardly deny knowledge of the required home-office approval.

4. The substantive mail fraud counts must be distinguished from a charge of conspiracy which, being an agreement, calls for proof of an intended use of the mails. Abbott v. United States, 5 Cir., 1956, 239 F.2d 310, 314; Guardalibini v. United States, 5 Cir., 1942, 128 F.2d 984.

the contents of the presentence report were strongly adverse to him, and that he should have had some opportunity to inspect the reports unfavorable to him and, if possible, refute them. This has been a recurring problem in both state and federal courts, and the practice of allowing the defendant to examine his presentence report varies widely.[5] The recently amended Federal Rules of Criminal Procedure which became effective subsequent to the sentencing and appeal here involved contain a newly added provision which gives formal recognition to the existence of the power of the courts to make presentence reports available to the defendant or his counsel, F.R.Crim.P. 32(c) (2),[6] and the likelihood that this discretionary power might be employed more frequently than in the past.[7]

But we find no abuse of discretion by the District Court here in refusing to allow Crosby access to the report. Of course our affirmance does not preclude Crosby from seeking a resentence in the District Court under F.R.Crim.P. 35 [8] in which event he might persuade the Court to exercise the discretionary authority under new Rule 32 to allow him to see the report and offer any comments or explanations he might have.

None of the other contentions raised by the appellants merit comment.

Affirmed.

5. See Advisory Committee's Note, 39 F.R.D. 69, 193–194.

6. Rule 32.
"(c) Presentence Investigation.
"(2) Report. * * * The court before imposing sentence may disclose to the defendant or his counsel all or part of the material contained in the report of the presentence investigation and afford an opportunity to the defendant or his counsel to comment thereon. Any material disclosed to the defendant or his counsel shall also be disclosed to the attorney for the government."
39 F.R.D. 69, 192.

7. See Advisory Committee Notes, 39 F.R.D. 69, 194:
"Practice in the federal courts is mixed, with a substantial minority of judges permitting disclosure while most deny it.

* * * [T]he amendment goes no further than to make it clear that courts may disclose all or part of the presentence report to the defendant or to his counsel. It is hoped that courts will make increasing use of their discretion to disclose so that defendants generally may be given full opportunity to rebut or explain facts in presentence reports which will be material factors in determining sentences."

8. This rule, too, was significantly amended. See Advisory Committee Note, 39 F.R.D. 69, 196–97.
Rule 35. "Correction or Reduction of Sentence. * * * The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, * * *."