UNITED STATES of America, Appellee,

v.

Donald J. PICARD, Defendant-Appellant.

No. 72-1026.

United States Court of Appeals, First Circuit.

Heard June 5, 1972.

Decided July 17, 1972.

---

**216**

Joseph C. Delcore, Everett, Mass., with whom Alfred Paul Farese, Everett, Mass., was on brief, for appellant.

Carroll F. Jones, Asst. U. S. Atty., with whom William B. Cullimore, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges

COFFIN, Circuit Judge.

The appellant, Donald J. Picard, was indicted on two counts of selling heroin in violation of 26 U.S.C. § 4705(a). The jury returned a guilty verdict on both counts and the district court imposed two concurrent twenty-year sentences. Appellant's major contentions are that he was denied due process and the effective assistance of counsel by certain limitations placed by the court on the scope of his discovery and that due process was violated by the court's refusal to disclose the contents of a presentence report to him or to permit his counsel, who had been allowed to see the report, to communicate with him regarding the report's contents.[1]

The illegal heroin sales which resulted in appellant's apprehension and conviction were made to a federal narcotics agent through an intermediary named Paul LaFond. Prior to trial, appellant

---

1. Appellant asserts two additional grounds for relief which merit only the following comments. He asserts a missing link in the chain of custody of a lock-sealed envelope containing heroin because of the absence of testimony from a chief chemist who turned it over to the examining chemist. The seal being unbroken when the latter received it, there was no error in admitting the contents. United States v. Burris, 393 F.2d 81 (7th Cir. 1968). Appellant also argues, without author-ities, that it was error to give an instruction allowing the jury to take into account the prior felony convictions of two defense witnesses, testified to on direct examination. The instruction was similar to many which are commonly given and identical to that sustained in United States v. Napue, 401 F.2d 107, 113 (7th Cir.), cert. denied, 393 U.S. 1024, 89 S.Ct. 634, 21 L.Ed.2d 568 (1968). Appellant's contention is frivolous.

moved through his attorney for permission to interview LaFond, who was then confined in a federal prison, and for disclosure by the government of the name of the informer who had introduced the federal agent to LaFond. The court acceded to appellant's request to interview LaFond, but denied the request for disclosure by the government of the identity of the informer. The court further ordered that LaFond not be asked about the identity of such individual. This order was reinforced at the trial by the court's refusal to allow the identification of any individuals with whom the narcotics agents talked regarding Paul LaFond's activities. Appellant contends that this policy of nondisclosure impermissibly limited his attorney's activities on his behalf and effectively eliminated any possibility he may have had to establish an entrapment defense.

Appellant relies chiefly on Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1956), a case in which the Supreme Court reversed a conviction for possession of narcotics because the name of an informer had been withheld. The Court recognized the problem not as one calling for a fixed rule of disclosure but as "one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62, 77 S.Ct. at 628. The facts tipping the balance in favor of disclosure in *Roviaro* were supplied by the Court's findings that the unidentified informer "had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might [have been] a material witness as to whether the accused knowingly transported the drugs as charged." *Id.* at 55, 77 S.Ct. at 625.

In the present case, no suggestion is made that the undisclosed informer ac-

tually witnessed the sales of heroin for which appellant was prosecuted, or that such individual played any part in the planning of those sales. Instead, the theory is that access to the individual who originally introduced LaFond to the government agent would have assisted the defense in determining whether LaFond was working for the government during the critical period and whether the heroin sales were therefore the fruits of an entrapment scheme.

The problem with this theory, as stated, is that LaFond was originally indicted along with appellant for his participation in the heroin sales in question, subsequently pleaded guilty to a substituted information and was given a two-year sentence. Furthermore, the government agent to whom the sales were made testified on cross-examination that he had no reason to believe that LaFond knew prior to his arrest that he was dealing with a government agent. In view of the government's representation that disclosure of the name of the informant would involve a risk of physical harm, and despite LaFond's disappearance at the time of the trial, we cannot say that the district court erred in holding that the informant's involvement in the transactions was too tenuous to require disclosure. *See, e. g.,* United States v. Anthony, 444 F.2d 484, 486–487 (9th Cir. 1971); Zaroogian v. United States, 367 F.2d 959, 962 (1st Cir. 1966); Marderosian v. United States, 337 F.2d 759, 760–761 (1st Cir.), cert. denied, 380 U.S. 971, 85 S.Ct. 1328, 14 L.Ed.2d 268 (1964).

A more troublesome issue relates to the sentencing court's refusal to allow the defendant access to the presentence report and to the court's admitted reliance on certain unverified information contained therein.[2] The bulk of the

---

2. Debate over the merits of disclosure of presentence reports has been spirited and extensive, the traditional case law holding that the sentencing court has largely unreviewable discretion in deciding whether to grant the parties access to the report. Summaries of the relevant literature are contained in American Bar Association, Standards Relating to Sentencing Alternatives and Procedures § 4.4 (Approved

twelve-page report contained background information on appellant, his family and marital history, education, employment history, financial assets and obligations, religion, physical and mental health, military service record and a list of some 58 reported arrests over a twelve-year period.[3] The report also contained the unverified assertion, from a "reliable source", that narcotics had been purchased at appellant's home on at least five separate occasions prior to the events which led to his arrest. In addition, the report noted that the Hells Angels' Motorcycle Club of Lowell, Massachusetts, of which appellant was the president, was "reportedly a brotherhood of individuals who have an extensive narcotic distribution complex with headquarters in Lowell. This Club is known to have not only actively dealt in drugs, but also has engaged in stealing motorcycles and holding them for ransom. They have also dealt in the illegal sale and procurement of firearms." The report also stated that the appellant, while living in New Hampshire, was "known to have had dealings in drugs but only to a select number of people."

Appellant's attorney was allowed to see the presentence report, but he was not permitted to disclose its contents or discuss it in any way with his client. The reasons given by the court for limiting disclosure of the report to the attorney was that it felt that there was a "very serious danger" of physical harm to some of the report's sources of information and it wanted to avoid prolonging the sentencing proceedings. The court acknowledged that the report contained hearsay statements but stated that it did not accept "all of the report as true". Before pronouncing sentence, the court stated, "It is my opinion, based on the type of crime involved, based on the evidence that was introduced in the case, and based on the probation report, simply put, [appellant] is a dangerous menace to society."

In this as in many other cases, we deal not with the result—the two twenty-year concurrent sentences—but with the path taken to reach that result. The question here is whether there is a duty on the court, when it chooses to rely generally on a presentence report which includes unverified statements connecting a defendant with serious criminal activity other than that for which he has been convicted, to disclose the substance of those statements through counsel to the defendant. In facing the question, we seek guidance from two sources: the Constitution and the permissible reaches of discretion under Rule 32(c) (2), F.R.Crim.P. As to the first, despite our own and many others' assumptions, the Supreme Court has never directly confronted the issue of the extent to which the contents of presentence reports must be disclosed to defendants in order to comport with due process.[4] As to the second, Rule 32(c)

Draft 1968) [hereinafter cited as ABA Standards] ; 2 C. Wright, Federal Practice and Procedure § 524 (1969) ; Lehrich, The Use and Disclosure of Presentence Reports in the United States, 47 F.R.D. 225 (1969) [hereinafter cited as Lehrich].

3. The arrest record began when appellant was 17. It included 24 charges of motor vehicle violations, 6 charges of drunk or disorderly conduct, 6 charges of nonsupport, 8 charges of assault and battery (five of them involving police officers, weapons, or an attempt at murder), and other charges of possessing firearms, breaking and entering, possession of narcotics, armed robbery, rape, larceny of a motor vehicle, and receiving stolen prop-

erty. Despite this impressive record of charges, appellant had spent only a few months in jail and had paid in fines some $1200.

4. Although several courts, including our own, two leading commentators and the Advisory Committee have read Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), as holding that the failure to disclose the contents of a presentence report to a defendant involves no violation of due process, see, e. g., United States v. Lloyd, 425 F.2d 711, 712 (5th Cir. 1970) ; United States v. Gross, 416 F.2d 1205, 1214 (8th Cir. 1969), cert. denied, 397 U.S. 1013, 90 S. Ct. 1245, 25 L.Ed.2d 427 (1970) ; Cook v. Willingham, 400 F.2d 885 (10th Cir.

(2) provides that the sentencing court "may disclose to the defendant or his counsel all or part of the material contained in the report . . . and afford an opportunity to the defendant or his counsel to comment thereon." The quoted provisions of Rule 32 do not dispose of appellant's challenge, however, since he does not question the existence of discretion in disclosing the contents of a report but the propriety of a specific exercise of that discretion. In resolving the latter issue, Rule 32 is strangely silent.[5]

We do know from Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), and Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959), that a court may rely in imposing sentence on "responsible unsworn or 'out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics." 358 U.S. at 584, 79 S.Ct. at 426. We also know that this relaxation in the traditional evidentiary rules and procedures applicable to the guilt-determining stage during the penalty-determining stage is not unlimited. The clearest limitation is that a sentence must not be founded, even in part, "upon misinformation of constitutional magnitude", United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L. Ed.2d 592 (1972) [referring to reliance

1968) ; Powers v. United States, 325 F.2d 666, 667 (1st Cir. 1959) ; 8A Moore's Federal Practice ¶ 32.03 [4], at 32–47 (2d ed. Cipes 1972) ; 2 C. Wright, Federal Practice and Procedure § 524, at 396 (1969) ; Advisory Committee Note to the 1966 Amendments to Rule 32, F.R.Crim.P., 39 F.R.D. at 193; *but see* Marano v. United States, 374 F.2d 583, 585–586 n. 3 (1st Cir. 1964 , the issue was not presented in that case, as the Court itself explicitly recognized, 337 U.S. 241 at 252 n. 18, 69 S.Ct. 1079, since the contents of the report there in question had been fully disclosed to the defendant in open court. Because of this disclosure, the case was decided solely under the Confrontation Clause of the Sixth Amendment. This was also the conclusion reached in ABA Standards, *supra* n. 2, at 224. Similarly, in Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516, reh'g denied, 359 U.S. 956, 79 S.Ct. 737, 3 L.Ed.2d 763 (1958), another case sometimes cited for the proposition that due process does not require disclosure of any part of a presentence report, disclosure was not at issue since the unsworn incriminating statements by the prosecutor at the time of sentencing were made in the presence of the defendant who acknowledged the truth of the charges being made.

The only Supreme Court case which could be read as approving a fixed policy of nondisclosure is Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). In that case, Justice Douglas, writing for the majority, characterized Williams v. New York in dicta as holding that due process does not require judges "to have hearings and to give a convicted person an opportunity to participate in those hearings when he came to determine the sentence to be imposed." *Id.* at 606, 87 S.Ct. at 1210. Justice Douglas, whose strong views favoring mandatory disclosure are well known, House Doc. No. 390, 89th Cong., 2d Sess. (1966) (Justice Douglas dissenting from the promulgation of the 1966 amendment to Rule 32), immediately went on, however, to indicate that the real issue in *Williams* was the use of out-of-court statements at sentencing and not the propriety of their disclosure. *See also* Mc-Gautha v. California, 402 U.S. 183, 246–247, 91 S.Ct. 1454, 28 L.Ed.2d 711 (Douglas, dissenting opinion) ; Lehrich, *supra*, 47 F.R.D. 225 n. 2, at 246 et seq. ; ABA Standards, *supra* n. 2, at 224.

5. The Advisory Committee note to Rule 32 does state, however, that disclosure is to be encouraged : "It is hoped that the courts will make increasing use of their discretion to disclose so that defendants generally may be given full opportunity to rebut or explain facts in presentence reports which will be material factors in determining sentences." Advisory Committee Note to Proposed Rule 32(c) (2) (adopted), F.R.Crim.P., 39 F.R.D. 193, 194 (1966) ; *see also* United States v. Solomon, 422 F.2d 1110, 1120–1121 (7th Cir. 1970) ; Baker v. United States, 388 F.2d 931, 934–935 (4th Cir. 1968) (Winter, Circuit Judge, concurring) ; United States v. Fischer, 381 F.2d 509, 512 (2d Cir. 1967), cert. denied 390 U.S. 973, 88 S.Ct. 1064, 19 L.Ed.2d 1185 (1968) ; Bannister v. United States, 379 F.2d 750, 754 (5th Cir. 1967).

on prior uncounseled convictions].[6] An earlier case, Townsend v. Burke, 334 U. S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), set aside the sentence of an unrepresented defendant whose sentence was based on false information concerning prior convictions. While, viewed in the context of historical development, *Townsend* could be regarded primarily as a protest against denial of counsel,[7] at a minimum it stands for the proposition that there should be some opportunity to call to the sentencing court's attention that what is contained in the presentence report is not acquiesced in.[8] We must hold that, subject to what we say *infra,* the substance of a presentence report, to the extent it is relied upon, should be made known to the defendant.[9]

■ Appellant must therefore be resentenced and, under our policy, Mawson v. United States, 463 F.2d 29 (1st Cir., 1972), by another judge. On resentencing, the court should either identify for the record and disavow information not relied upon or disclose to the defendant and his counsel as much of the report as is consistent with its desire to protect either the defendant (e. g., diagnostic information may be withheld to the extent that its disclosure might impede rehabilitative efforts) or others. One method of accomplishing this sensitive task would be for the court to excerpt from the report any possibly prejudicial diagnostic evaluations and any statements which may expose a vulnerable source to identification by the defendant. Any material so excerpted should then be summarized orally in open court, insofar as this can be accomplished in a manner which removes the possibility of

6. *See also* Verdugo v. United States, 402 F.2d 599, 608–613 (9th Cir. 1968), cert. denied, sub nom., Turner v. United States, 397 U.S. 925, 90 S.Ct. 931, 25 L.Ed.2d 105 (1970) (consideration at sentencing of illegally seized evidence improper) ; Armpriester v. United States, 256 F.2d 294 (4th Cir. 1958) (testimony at presentence hearing relating to an inadmissible confession of guilt, to the extent that it is prejudicial, requires resentencing) ; *contra* United States v. Schipani, 435 F.2d 26 (2d Cir. 1970) (evidence from an illegal wiretap, excluded at trial, could be considered in imposing sentence).

7. *But see* United States v. Malcolm, 432 F.2d 809, 815–819 (2d Cir. 1970) ; United States ex rel. Jackson v. Myers, 374 F.2d 707, 710–712 (3d Cir. 1967) ; United States v. Strauss, 443 F.2d 986, 990–991 (1st Cir. 1971) ; *cf.* Putt v. United States, 363 F.2d 369 (5th Cir.), cert. denied, 385 U.S. 962, 87 S.Ct. 403, 17 L.Ed.2d 307 (1966) (no reliance on misinformation). *Cf.* United States v. Weston, 448 F.2d 626, 632 (9th Cir. 1971).

8. *See* Verdugo v. United States, *supra* n. 6, 402 F.2d 599, at 613 (Browning, Circuit Judge, separate opinion) ; Baker v. United States, *supra* n. 5, 388 F.2d 931, at 935 n. 1 (Winter, Circuit Judge, concurring) ; United States v. Maroney, 355 F.2d 302, 310 n. 10 (3d Cir. 1966) ; Smith v. United States, 223 F.2d 750, 754 (5th Cir. 1955), rev'd on other grounds, 360 U.S. 1, 79 S.Ct. 991, 3 L. Ed.2d 1041 (1958) ; ABA Standards, *supra* n. 2, at 222–24; Lehrich, *supra* n. 2, 47 F.R.D. 225, at 249 ; Higgins, Confidentiality of Presentence Reports, 28 Albany L.Rev. 12, 21 (1964).

9. The right of allocution, although not of constitutional dimension, Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), is expressly provided for in Rule 32(a) (1), F.R.Crim.P. If the opportunity given to speak "in mitigation of punishment" is to be meaningful, the defendant and his counsel must have some sense of the information (including that contained in the presentence report) which may influence the court's sentencing decision.

Moreover, allocution is important insofar as it may result in correction of a presentence report. The effect of errors in such reports is not confined to the sentencing process. When a defendant is committed to the custody of the Attorney General, the presentence report generally accompanies him so that misinformation finding its way into the report may infect the handling of the defendant at later stages as well. *See generally* Administrative Office of the United States Courts, Division of Probation, The Presentence Investigation Report (1965) ; Advisory Committee on Criminal Rules, Judicial Conference of the United States, Proposed Amendments to Criminal Rules, 48 F.R.D. 551, 618 (1970).

prejudice to rehabilitative efforts or of identification of vulnerable sources.[10]

We recognize that disclosure, even with the qualifications we have specified, may lead to other problems. We prefer, however, to rely on the ingenuity of the district courts in dealing with these problems in the first instance.

*The sentence is vacated, and the case is remanded for proceedings consistent with this opinion.*

10. What we have said about disclosure is generally consistent with the positions recently taken, primarily on policy grounds, by five study groups. *See* Advisory Committee on Criminal Rules, *supra* n. 8; ABA Standards, *supra* n. 2; American Law Institute, Model Penal Code § 7.07 (5) (P.O.D.1962); National Council on Crime and Delinquency, Model Sentencing Act § 4 (1963); President's Commis-

sion on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society (1967), at 145. Liberal disclosure of the contents of presentence reports is also favored in 8A Moore's Federal Practice ¶ 32.03 [4] (2d ed. Cipes 1972) and 2 C. Wright, Federal Practice and Procedure § 524 (1969).