William P. KRUEGER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17233.

United States Court of Appeals
Eighth Circuit.

April 21, 1964.

Rehearing Denied June 1, 1964.

Noel L. Robyn, St. Louis, Mo., made argument for appellant and filed brief with Norman Zaltsman, Clayton, Mo.

William A. Kitchen, Asst. U. S. Atty., Kansas City, Mo., made argument for appellee and filed brief with F. Russell Millin, U. S. Atty., Kansas City, Mo.

Before VAN OOSTERHOUT, RIDGE and MEHAFFY, Circuit Judges.

RIDGE, Circuit Judge.

William Paul Krueger, along with four other persons, was charged in twenty-seven counts of a twenty-eight count indictment with the substantive offense of using the mails to defraud (Section 1341, Title 18 U.S.C.A.) and in Count 28 with conspiracy (Section 371, Title 18 U.S.C.A.). The allegation as to use of the mails charged in each count of such indictment was related to a scheme or artifice to defraud, covering a period "prior to October 1957 and continuing to on or about the 20th day of May, 1958." The activities of the fraud and conspiracy charged were specifically related to a scheme and artifice to defraud purchasers and prospective purchasers of coin vending machines warranted for use

in the dispensing and sale of cigarettes or ballpoint pens.[1]

Appellant and one Larry W. Thornton stood trial on such charges. Thornton was found not guilty on all counts of the indictments submitted to the jury for consideration as to him. Appellant was found guilty by jury verdict on Counts 3, 13, 19 and 21, charging substantive offenses, ante. The other defendants, Clovis N. Ooley, Don Garrison and Joe Hanlin, each entered pleas of guilty before trial to Counts 1 and 28 of the indictment. The other counts thereof were dismissed as to them at time of imposition of their sentence.

■ Appellant was sentenced to two years on each count of the indictment on which he was found guilty, to run concurrently. He, alone, prosecutes this appeal. Inasmuch as concurrent sentences were so imposed, and the quantum of sentence thereof is less than might have been assessed under any single count as to which appellant was found guilty, "an affirmance is dictated if the evidence was sufficient to sustain the conviction under any one count." Johnson v. United States, 329 F.2d 600 (8 Cir. 1964); Slocum v. United States, and Eaton v. United States, 8 Cir., 325 F.2d 465.

Joe Hanlin and his wife were the owners of ninety-nine per cent. of the stock of Hanlin Manufacturing Company and Midwest Manufacturing Company. Neither company had a plant or any physical equipment. At all times here considered, such companies alternatively acted as jobbers of cigarette vending machines, but the sales here appraised were made in the name of "Midwest". Petitioner was one such salesman, who contacted prospective purchasers answering advertisements appearing in local papers, similar to that appearing in the footnote.[2] Hanlin was in sole charge of the office of both the above companies. His arrangements with salesmen employed by him were uniform. He purchased the vending machines for $60.00 each and sold them to the salesman for between $70.00 and $80.00 apiece. The salesman sold the machine to purchasers for $195.00 to as much as $210.00 apiece; thereby receiving approximately a sixty per cent. commission, less freight charges which were paid by the salesman. As a sale was closed, a signed contract, with a cashier's check, was obtained and sent by the salesman through the mail to Hanlin, who took out his share and mailed the remainder to the man responsible for the sale. The contract was entered into in the name of one or the other of Hanlin's companies, but usually through Midwest; and contained a guarantee for one year that each machine was free of faulty construction, with any necessary cost of repairs to be made thereto during that time, assumed by Midwest. The evidence established a complete failure on the part of Midwest to live up to such warranty.

Hanlin gave very little instruction to salesmen employed by him. In the main, he told the salesmen they should first get the purchaser acquainted with the vending machine business and its money-making potential; the amount a purchaser could earn by the purchase of ten or more units, depending on location which Midwest would establish. He also provided them with photographs of the vending machine and contracts to be executed by the purchasers. Otherwise,

1. Petitioner was accused of attempting to sell, by means of false and fraudulent pretenses, both cigarette and ballpoint vending machine equipment. As the counts under which he was found guilty pertain only to sales of cigarette vending machines, we limit our discussion solely to that item.

2. "Reliable party wanted, male or female, to service route of cigarette machines. No selling or soliciting. Route established for operator, full or part time. Substantial income per month to start. $1,095.00 to $2,190.00 cash required. Please don't waste our time unless you have the necessary capital and are sincerely interested in expanding. We finance expansion. If fully qualified and able to take over at once write briefly about yourself and include number for personal interview. Midwest Manufacturing Company. Write Box MM 44 care of Orange Leader."

the salesmen were fairly much on their own. Without going into details, the four purchasers to whom appellant admittedly sold ten machines each, were given a "sales pitch" as to the quality of the machines; where they were to be located by Midwest; the profits to be derived therefrom, ranging from $100.00 to $300.00 a month; and, that tobacco companies would pay placement fees of $20.00 per location to the purchaser; all of which was established to be false. Of course, the machines were represented to the purchasers as being of good quality and trouble-free. As it turned out, most all of them were imperfect. Cigarettes could be obtained from them without using coins; and when coins were inserted, cigarettes would not be ejected. One purchaser, a Mr. Manchac, testified he did not receive the same machine shown to him by appellant in a photograph. Complaints were continuously received by Hanlin as to the mechanical problems of the machines. Hanlin, himself, testified he had not heard of anyone making money on the machines as his salesmen represented. Concededly, the mails were used in the execution of the scheme to defraud.

Nevertheless, it is appellant's primary contention before us, that the District Court erred in overruling his motion for acquittal made at the close of all the evidence; since the use of the mails as established by the evidence was merely "incidental, not anticipated," and was not an integral part of the scheme charged. The letters which are the basis of the counts on which appellant was found guilty are set forth in the footnote.[3] The letters relating to Counts 3 and 13 were sent by Hanlin to purchasers Courtner and Vester, after the full purchase price for the vending machines was received by Midwest. As to Counts 19 and 21, the letters were sent to purchasers Manchac and Hardcastle. It is apparent on the face of the last two letters that acknowledgment of partial payment was first made and thereafter it was stated: "On completion of your contract we will process your order and ship" the machines.

In the light of the above-stated facts and other matter revealed in the evidence, we can find no merit in appellant's reliance on Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944) and Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960); nor in the argument made by him to the effect that the money received by appellant and the use of the mails as here considered, in nowise aided or abetted the execution of the fraudulent scheme charged. But, even if appellant's argument so made in respect to Counts 3 and 13, supra, may be said to have some merit, (a fact which we need not presently sound out) the evidence clearly establishes that the letters sent, as charged in Counts 19 and 21, supra, acknowledged only partial payment by the purchasers named therein. Manifestly, those letters were sent to and re-

3. Count 3: December 27, 1957: "Dear Mr. Courtner. Our location man will probably be in Topeka the first week in January. We will take care of the location just as soon as possible. Thanking you again for this order, we are, Sincerely yours, Hanlin Mfg. Co."

Count 13: March 30, 1958: "Dear Mr. Vester. We are shipping your units this week, via motor freight prepaid. We know of no reason why you should not fulfill your part of the contract. Machines are paid for and we will deliver and locate, and live up to our contract 100 percent. Sincerely yours, Midwest Manufacturing Co., Joe Hanlin"

Count 19: April 2, 1958: "This will acknowledge your order for 10 cigarette units and your check for $1,390. On completion of your contract, we will process your order and ship via motor freight, prepaid. Thanking you for your order, we are, Sincerely yours, Mid West Manufacturing Co., Joe Hanlin."

Count 21: April 2, 1958: "Dear Sir. This will acknowledge your order for 10 cigarette units along with your check for $2,100.00. On completion of your contract, we will process your order and ship prepaid in about 10 days. Thanking you for your order, we are, Sincerely yours, Mid West Manufacturing Co., Joe Hanlin"

ceived by those purchasers of machines to whom such letters were personally addressed, to lull them into a false sense of security prior to the final consummation of the sales made to them. Appellant's argument that such letters were merely "incidental and an unanticipated use of the mails," is illusory and unsound.

It was established that the above letters were mailed and sent in the usual course of Hanlin's business, as appellant knew they would be. The mailing and receipt of either such letter, standing alone, under the facts here established is sufficient to sustain the conviction and sentence imposed under either Count 19 or 21. Cf. United States v. Sampson, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962); Parr v. United States, supra, 363 U.S. l. c. 390, 80 S.Ct. 1171, 4 L.Ed.2d 1277; Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954); Badders v. United States, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916); Butler v. United States, 317 F. 2d 249, 256 (8 Cir. 1963).

That the mailing of such letters was not "merely incidental and collateral to the fraudulent scheme" charged, but was a step in the plot to perpetrate such fraud and to avoid detection, is the only reasonable inference to be made from the evidence in the case at bar. Cf. Adams v. United States, 312 F.2d 137, 140 (5 Cir. 1963); United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836 (1917). Very apparently, the jury so considered the same.

Appellant's contention that his trial court erred in permitting Hanlin to testify that he had pleaded guilty to the same offense for which petitioner was on trial, is without merit. Particularly is this so, since no objection was made to such testimony at the time the remark was elicited and no motion was made to strike the same. Cf. Goodman v. United States, 273 F.2d 853, 859 (8 Cir. 1960); Slocum v. United States, supra, 325 F.2d l. c. 467; Wood v. United States, 279 F. 2d 359, 363 (8 Cir. 1960).

Appellant's final contention, that his trial court failed to charge the jury that "puffing or mere exaggeration in sales talk" did not constitute a criminal offense, is likewise without merit. He was not indicted for that offense. Cf. Reistroffer v. United States, 258 F.2d 379, 392 (8 Cir. 1958).

Affirmed.