Jack Thornton **ATKINSON**, Appellant,

v.

**UNITED STATES** of America,
**Appellee.**

**M. Dean HODGES**, Appellant,

v.

**UNITED STATES** of America,
**Appellee.**

**Nos. 17825, 17826.**

United States Court of Appeals
Eighth Circuit.

April 14, 1965.

Rehearing Denied May 17, 1965.

98

Robert G. Duncan, Kansas City, Mo., Kenneth K. Simon, Kansas City, Mo., for appellants.

William A. Kitchen, Asst. U. S. Atty., Kansas City, Mo., F. Russell Millin, U. S. Atty., Kansas City, Mo., for appellee.

Before VAN OOSTERHOUT and RIDGE, Circuit Judges, and HENLEY, District Judge.

VAN OOSTERHOUT, Circuit Judge.

These are separate appeals taken by defendants Jack Thornton Atkinson and M. Dean Hodges from their conviction on each of the thirteen counts of an indictment returned against them jointly. The first twelve counts charged mail fraud in violation of 18 U.S.C.A. §§ 1341–1342. The thirteenth count charges conspiracy to perpetrate the mail frauds in violation of 18 U.S.C.A. § 371. Defendants were tried jointly before a jury and upon conviction, Atkinson was sentenced to five years imprisonment upon each of the first ten counts, such sentences to be served concurrently with each other, and two years imprisonment on counts eleven, twelve and thirteen, plus a total fine of $1,000, said sentences to be served concurrently with each other but consecutively to the imprisonment imposed on the first ten counts. Defendant Hodges was sentenced to three years imprisonment on each of the first ten counts, to be served concurrently with each other. Imposition of sentence on counts eleven, twelve and thirteen was suspended and Hodges was placed on probation for a period of three years, such probation to begin at the expiration of the sentences imposed upon the first ten counts. Hodges was fined $500 on count thirteen.

The mail fraud counts charged the defendants with having devised a scheme to defraud certain investors out of money or property by means of fraudulent representations and having placed or caused to be placed in the United States mail advertisements published in the Kansas City Star with the specific intent and purpose of executing such scheme or attempting to do so. Each count is based upon one of twelve advertisements placed in specified issues of the Kansas City Star during the period commencing October 27, 1963, and ending December 2, 1963.

Defendants contend that there is no proof that any one responded to the advertisements described in counts one, two, three, six, eight, nine, ten and eleven. Such statement appears to be factually correct. However, the gist of the offense is the causing of the insertion in the mail of matter intended to be used to effect the scheme to defraud. Each separate mailing constitutes a separate offense. Milam v. United States, 5 Cir., 322 F.2d 104, 109–10; Marvin v. United States, 10 Cir., 279 F.2d 451. The lack of success of a fraudulent scheme is no defense. Baker v. United States, 8 Cir., 115 F.2d 533, 538.

Moreover, federal courts, including this court, have consistently held that a general sentence on several counts of an indictment will be sustained upon appeal if the defendant was properly convicted upon any count which is good and which is sufficient in itself to support the judgment. Barenblatt v. United States, 360 U.S. 109, 115, 79 S.Ct. 1081, 3 L.Ed. 2d 1115; Krueger v. United States, 8 Cir., 331 F.2d 283, 284; Isaacs v. United States, 8 Cir., 301 F.2d 706, 733.

Here concurrent sentences were imposed upon each defendant with respect to the first ten counts and additional sentences with respect to counts eleven, twelve and thirteen, concurrent as to each other but consecutive as to those in counts one to ten. Thus, we need go

no further than to determine that a conviction was proper upon at least one count in each group.

■ Motions for acquittal were made by each defendant at the close of the Government's case, at the close of all of the evidence and renewed by post-trial motions. Such motions raised the issue of the sufficiency of the evidence to sustain the conviction upon any count. Defendants urge that the court committed error in overruling all such motions.

This court has had numerous occasions to set out the elements of mail fraud and conspiracy cases and to discuss the principles applicable to determining the sufficiency of the evidence to support a conviction in such cases. See Koolish v. United States, 8 Cir., 340 F.2d 513; Hayes v. United States, 8 Cir., 329 F.2d 209; Dranow v. United States, 8 Cir., 307 F.2d 545; Isaacs v. United States, 8 Cir., 301 F.2d 706. No useful purpose will be served in again stating the well-established principles here. We are convinced that the evidence, when viewed in the light most favorable to the Government as the prevailing party, adequately supports the conviction.

■ It is stipulated that the advertisements soliciting the victims were published in the Kansas City Star on the dates charged. In most instances, a reply to a box number at the Star was solicited. Responses by victims were followed up by phone calls from Atkinson arranging appointments. At least 7,000 copies of each issue of the Star were distributed by mail. The use of the mail in furthering the scheme is established. This is not seriously questioned except for the contention that it does not apply here because all victims who testified received their newspaper by carrier. Such fact is not disputed. The contention is without merit. It is sufficient that the use of the mail was caused by defendants in furtherance of the fraudulent scheme. See Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435; United States v. Sorce, 4 Cir., 308 F.2d 299, 301; Dranow v. United States, 8 Cir., 307 F.2d 545, 557.

■ Defendants' primary contention is that the proof is inadequate to establish a scheme to defraud. We have carefully examined the rather lengthy record. We do not propose to set out the evidence relating to all alleged fraudulent representations. We will only refer to a few of the principal items. The advertisements defendants caused to be inserted in the Kansas City Star are all quite similar but vary some as to content. The one published on November 3, 1963, described in count five, reads:

"PARTNER"

"Associate wanted. Preferably with some office exp. and perm. position. Salary & share profits. Small investment required. Address X 1251 Star."

Newcomb responded to this count five advertisement. Atkinson called Newcomb by telephone and arranged an appointment at Atkinson's office. In the course of several interviews, Atkinson represented that American Credit Associates, Inc., had been in business for some six years; that it had many offices throughout the country; had many employees; that the Kansas City office grossed $8,000 to $15,000 per month with monthly net profits of from $3,000 to $6,000; that because of his heavy workload, he needed a manager for the Kansas City office; and to insure an interest and incentive on the part of the manager, a $10,000 investment would be required which would purchase a 10% interest in the business. The manager would be paid an annual salary of $15,000; that the collection business was worth well over $100,000 and that an investor could get back his money any time he was dissatisfied if he did not expect a huge profit.

In a separate interview, Hodges confirmed Atkinson's representations. When Newcomb advised Atkinson that he could raise but $2,500, Atkinson promptly agreed to accept such amount to apply on the $10,000 purchase price with the balance to be paid out of profits, and told Newcomb he was manager and that a formal contract would be drawn later. No formal contract was ever drawn. Aft-

er Newcomb had observed more of the operation and had consulted with a Better Business Bureau, he advised Atkinson that the proposition had been misrepresented to him and that he wanted to withdraw and have his money refunded. Several conferences were held between Newcomb and Atkinson, and Hodges, but the money was never refunded.

Mayor responded to the count four advertisement and as a result had an interview with Atkinson at his office. He received substantially the same sales pitch as was given to Newcomb, which was generally confirmed by Hodges. Atkinson received a check for $1,000 from Mayor to apply upon the $10,000 investment and was made manager with a salary of $15,000. This occurred before Newcomb had terminated his interest. The check was promptly cashed. Mayor, after reporting for work on several days, became disillusioned and unsuccessfully sought to get his money back.

Mura answered a count five advertisement and in an interview was given substantially the same pitch as the others. There is considerable variance as to the number and location of offices in other cities and the number of employees. Mura watched the office for a time from the street and saw no traffic in or out and at about 11 a. m. saw two men leave and lock the office. He did not invest.

Louise Fisher, an auditor, answered the count twelve advertisement and received a lengthy sales pitch. When she informed Atkinson that she would not invest without examining the company books, the interview promptly terminated.

The secretary who was employed at Atkinson's office two and one-half days stated that there was practically no work to do and that she saw no mail activity and very little business activity, and that she quit because she did not like the surroundings.

American Credit Associates was incorporated in 1958 in Missouri. The charter was forfeited on January 1, 1961, for failure to file annual report and antitrust affidavit. Defendants offered no evidence in their behalf.

Atkinson was the prime actor in this venture. The evidence against him is strong. The evidence against Hodges is somewhat weaker. However, there is ample evidence to support a jury finding that he joined and participated in the venture. The evidence as a whole, much of which is not here specifically discussed, affords a firm foundation for a jury finding of a fraudulent scheme entered into before the advertisements were printed and mailed, and of which the mailing was a part. Adequate evidentiary support exists for a finding that the statements made as to the scope and profits of the business were false and fraudulent. The court committed no error in overruling all motions for acquittal.

▆▆▆ Finally, defendants urge that the court erred in refusing to grant a mistrial because of a reference by Mr. Newcomb to Atkinson's conviction. Mr. Newcomb upon cross-examination by Mr. Duncan, Atkinson's attorney, on the charge that a false representation had been made, gave the source of information as the Better Business Bureau. The record shows the following:

"A. The man at the Better Business Bureau, Mr. Birkhead.

"Q. Mr. Joe Birkhead?

"A. When I went there he showed me where Atkinson had been convicted for—

"Mr. Duncan: I am going to object to that, Your Honor.

"The Court: The objection will be sustained.

"Mr. Duncan: Move for mistrial on that basis, Your Honor, being unresponsive, move that the jury be discharged.

"Mr. Kitchen: Your Honor, the answer was in response to a question on cross-examination.

"The Court: Yes, it was in response to question propounded by counsel for defendant Atkinson.

"The motion will be denied and the jury instructed to disregard the answers."

Very shortly thereafter in the same cross-examination the following transpired:

"Q. And during that two weeks' time you hadn't been back out there, had you?

"A. I had called, like I said previously, to try to find out—at first I called to try to find out when we were going to get this contract in legal language. Then when we found out about Atkinson's convictions and

"Mr. Duncan: Now, I move for mistrial, Your Honor.

"A. What was your question?

"The Court: Mr. Newcomb, just answer the questions. As I said before, don't make any statement about what anyone else told you in the case except one of the defendants. Any statements made to you by other parties, Mr. Birkhead or anybody else, would be hearsay testimony in the case. Of course counsel asked you what he told you so he is inviting that answer."

The trial court, in ruling upon defendants' motion for a new trial with respect to the contentions now under consideration, states:

"Once again the Court turns to the tests set forth in Kotteakos, and finds that when viewed in the context of the entire proceedings, these two statements would not be of such import that their presence or absence would change the outcome. The Court notes that the witness was admonished for making such statements and that the jury was instructed to disregard the statements. Further it was during the questioning by counsel for the defendants that such statements were elicited, and even though not directly responsive, the Court is of the opinion that the line of questioning taken by the defendants' counsel was such that it invited the answers given by Mayor [Newcomb]. The Court is buttressed in its opinion that the statements did not effect the outcome in that though the statements applied only to Defendant Atkinson, the jury found Hodges guilty of a scheme in consort with Atkinson and of conspiracy with Atkinson without any reference to previous convictions of Hodges, who had none.

"Although the convictions were reversed in Kotteakos, the Court feels that the factual situation in this case is sufficiently different in this case that such reversal in Kotteakos does not dictate a new trial in this case. * * *"

The trial court had an opportunity to observe the jury and the impact of the testimony upon it. The trial court's appraisal of the effect is entitled to considerable weight. The volunteered statement of Newcomb was inadmissible. The trial court acted promptly and sustained the objection and advised the jury to disregard the testimony. No request was thereafter made for the court to give any further instruction on the matter. The witness was cut off before he had an opportunity to state the crime for which the defendant was said to have been convicted. Whether prejudicial error has been committed must be determined upon the basis of the record as a whole. See Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557; Homan v. United States, 8 Cir., 279 F.2d 767, 771; Davis v. United States, 8 Cir., 229 F.2d 181, 187. We agree with the trial court's determination that no prejudicial error has been committed.

Our examination of the record satisfies us that the defendants have had in all respects a fair trial.

The judgments appealed from are affirmed.