812 F.2d 1409
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernest WAGNER (86-1223)
Denise Hall (86-1225) Defendants-Appellants.
 Nos. 86-1223 and 86-1225.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1987.
 
 Before WELLFORD and GUY, Circuit Judges, and PECK, Senior Circuit Judge.
 GUY, Circuit Judge.
 
 
 1
 Defendants, Ernest Wagner and Denise Hall, were charged in a multi-count narcotics indictment along with five other defendants. Both defendants were charged with conspiracy to possess with intent to distribute and to distribute heroin (Count I) and aiding and abetting each other in the distribution of heroin (Count II). Wagner was also charged in two other distribution counts. Hall was also charged in two other counts with conspiracy and aiding and abetting in retaliation against a government informant.[1]
 
 
 2
 The defendants appeal their jury convictions on these charges and raise a number of issues on appeal. Finding no merit to these issues, we affirm.
 
 I.
 
 3
 The Jury was Allowed to Read Transcripts of a Tape Recording Introduced by the Government
 
 
 4
 Defendant Hall raises only one issue on appeal. She contends that it was error for the jury to be furnished with transcripts of an incriminating tape recording offered by the government against her. She contends the tape recording was of poor quality and that she refused to stipulate to its content. Upon the defense objecting at trial, Judge Gilmore listened to the tape himself before allowing the jury to hear it. He found the transcripts to be accurate except for one portion which he ordered marked "inaudible" on the transcript. The jury was specifically instructed that it was the tapes and not the transcripts which were the evidence. The tapes were available to this court on appeal.
 
 
 5
 This circuit has previously set forth standards and procedures for reviewing the accuracy of transcripts in United States v. Robinson, 707 F.2d 872 (6th Cir.1983), and United States v. Terry, 729 F.2d 1063 (6th Cir.1984). Judge Gilmore's handling of the tape and transcripts was consistent with our prior holdings. Finding no abuse of discretion, we affirm on this issue.
 
 II.
 Severance and Misjoinder
 
 6
 Wagner claims that the court abused its discretion in failing to grant his severance motion and that he was improperly and prejudicially joined with codefendants for trial.
 
 
 7
 At the outset we note that defendant made no Fed.R.Crim.P. 8(b) misjoinder motion at trial. As this court noted in United States v. Williams, 711 F.2d 748 (6th Cir.), cert. denied, 464 U.S. 986 (1983):
 
 
 8
 Courts and commentators agree that failure to raise a Rule 8 motion before trial constitutes a waiver of the right to challenge misjoinder.... A pretrial motion alleging prejudicial joinder under Rule 14 does not serve to preserve a claim of misjoinder.
 
 
 9
 Williams, 711 F.2d at 750-751 (citations omitted).
 
 
 10
 Thus, on appeal we are left only with a review of the refusal to grant a severance which we review on an abuse of discretion standard. The trial judge's decision to deny severance will be overturned only upon an affirmative showing of prejudice. United States v. Jackson, 409 F.2d 8 (6th Cir.1969).
 
 
 11
 In order to put this issue in proper perspective and as a backdrop for the review of the other issues raised on appeal, it is helpful to first consider what the government's proofs showed at trial.
 
 
 12
 The government's principal witness at trial was George Earl James, a confidential informant for the Drug Enforcement Administration (DEA). James had known Wagner for seven or eight years and for the time period relevant to this indictment was actually living with Wagner and his common-law wife and codefendant, Denise Hall. During this period of time James arranged controlled buys by DEA agents from Wagner. These agents corroborated James' testimony at trial. There is no doubt that this evidence clearly established that Wagner, helped by Hall, was running a heroin business out of Wagner's residence on Robson in Detroit as well as from his Chene Street pool hall. Thus, the evidence against Wagner and Hall on the conspiracy count and against Wagner on the two substantive counts can only be described as overwhelming.[2]
 
 
 13
 The main thrust of Wagner's severance argument concerns the fact that his common-law wife, Hall, and another fugitive defendant were charged in the same indictment with trying to shoot James after his role as an informant had been discovered. Wagner argues that testimony relating to a violent act such as this casts him in an unfavorable and prejudicial light. There are several problems with this argument. To begin with, Denise Hall was acquitted by the jury on these charges so the government's evidence even against the alleged principal was obviously lacking.
 
 
 14
 Second, the purpose of a severance is not to insulate a defendant from testimony concerning other codefendants but to avoid a situation where the jury might become confused and unable to compartmentalize the evidence. United States v. Kendricks, 623 F.2d 1165, 1168 (6th Cir.1980).
 
 
 15
 Merely because inflammatory evidence is admitted against one defendant, not directly involving another codefendant (and with which the other is not charged) does not, in and of itself, show substantial prejudice in the latter's trial.
 
 
 16
 United States v. Gallo, 763 F.2d 1504, 1525 (6th Cir.1985), cert. denied, 106 S.Ct. 1200 (1986).
 
 
 17
 Lastly, when a jury acquits on some counts and convicts on others, there is at least a strong suggestion that the jury was not confused and was able to attribute to each defendant "evidence pertinent to that particular party." Id. at 1526.
 
 
 18
 Persons jointly indicted normally should be tried together. United States v. Stull, 743 F.2d 439 (6th Cir.1984), cert. denied, 470 U.S. 1062 (1985). We find no abuse of discretion on the part of the trial judge in denying severance.
 
 III.
 
 19
 Evidence Concerning Codefendants Gloria Canales and Theodore Perkins
 
 
 20
 Gloria Canales and Theodore Perkins were codefendants of Wagner but were not present at trial. Canales had pled guilty prior to trial and Perkins was a fugitive. Wagner claims on appeal that testimony concerning their narcotics activities was not relevant or if relevant should have been excluded as being more prejudicial than probative.
 
 
 21
 Little time need be spent on this argument as it relates to Perkins. James' testimony at trial established that Perkins was Wagner's regular and immediate supplier of heroin. Perkins would come to the Wagner house two or three times a week and exchange heroin for cash. On some of these occasions James would pay Perkins with Wagner's funds. In fact, James and DEA undercover agent Anderson tried to set up an arrangement to deal directly themselves with Perkins on the pretext that Wagner was cheating them. In light of this testimony, the fact that there was also testimony of an alleged 100 gram sale of heroin by Perkins not directly involving Wagner could hardly be deemed prejudicial. Similarly, the fact that when Perkins was arrested he was found in possession of both heroin and cash is both relevant and probative of the fact that Perkins was a major dealer in heroin which was his alleged role in the conspiracy with Wagner.
 
 
 22
 The testimony concerning Canales is of a more questionable nature due to a rather tenuous linkage between Canales and Wagner. James, who is Canales' brother, testified that Canales was putting together a deal to buy Mexican heroin in a substantial quantity. A total purchase price of $180,000 was anticipated. This money was to be raised from several sources including Wagner. Canales and James were to travel to Laredo, Texas, and bring back the heroin. James testified that he saw Wagner give Canales $10,000 to $15,000 to finance part of the heroin purchase. James also testified that Wagner mentioned the trip to Laredo to him. On cross-examination James indicated that he had not actually seen Wagner give Canales the money but was told he had contributed. The trip to Laredo never occurred because Canales was arrested first on an unrelated charge. After her arrest and release on bail, James testified that his sister showed him $60,000 in cash which had been accumulated for the Laredo trip but which the FBI missed in their search of her house.
 
 
 23
 Since the Laredo trip never occurred, the jury was left with only the testimony concerning the planning for the trip. Since Canales was alleged to be a co-conspirator with Wagner, the evidence, albeit thin, of the proposed joint venture was relevant and probative. Although after cross-examination the jury only had a second hand account of Wagner's participation, there was no objection made to James' testimony that he was told Wagner had paid his money. It was elicited by defense counsel and no motion to strike was made. Indeed, if such a motion and been made, the statement would be arguably admissible as the statement of a co-conspirator under Fed.R.Evid. 801(d)(2)(E). The testimony as to the $60,000 is relevant in that it tends to corroborate the fact that Canales had been collecting money from various sources, including Wagner, for the Mexican heroin purchase.
 
 
 24
 Wagner also complains of James' testimony as it relates to Canales telling him that persons were "out to kill him." There is no merit to this claim. First, it was not objected to at trial and thus was not preserved for appeal. Fed.R.Evid. 103(a)(1). Second, it was relevant as it related to the charge against Denise Hall and the attempted shooting of James. The fact that it may have lacked relevance as to Wagner is not determinative when it has clear relevance to a charge against a codefendant.
 
 
 25
 We conclude that Judge Gilmore exercised proper discretion in admitting the testimony as it related to Perkins and Canales.
 
 IV.
 
 26
 The Admission of Statements by Codefendants Hall and Canales
 
 
 27
 Wagner argues that James should not have been allowed to testify as to certain statements made by codefendants Hall and Canales. The statements were offered into evidence as statements of a co-conspirator pursuant to the provisions of 801(d)(2)(E). Our decisions in United States v. Vinson, 606 F.2d 149 (6th Cir.1979), cert. denied, 444 U.S. 1074 (1980), and United States v. Enright, 579 F.2d 980 (6th Cir.1978), set forth in detail the procedures to be followed in the trial court when the statements of non-testifying alleged co-conspirators are offered into evidence. In his brief on appeal, Wagner misreads these cases and claims that as a "condition precedent" the government must demonstrate that a conspiracy existed, and that their offered statements were made during the course of and in furtherance of such conspiracy. Although this is one way the government may proceed, it is not its only alternative. The trial judge is free to allow the government to offer the statements, subject to proving the conspiracy by a preponderance of the evidence before it rests. The trial judge allowed the government to proceed in this matter and at the conclusion of the government's evidence made the requisite finding that the government had carried its burden. Upon our review of the record, we conclude that Judge Gilmore was not clearly erroneous in allowing the statements into evidence.
 
 V.
 
 28
 Prior Consistent Statements of George Earl James
 
 
 29
 After informant James had testified and been vigorously cross-examined, the government introduced, over defendant's objections, certain debriefing statements which had been given to James' case agent after each undercover transaction. These statements were introduced through DEA case agent Jon David Riddle who had supervised James. They were introduced as prior consistent statements under Fed.R.Evid. 801(d)(1)(B).
 
 
 30
 Wagner's argument is that such statements are inadmissible since they were not made before James had a motive to falsify. Wagner relies on United States v. Quinto, 582 F.2d 224 (2nd Cir.1978), as support. Wagner concedes the circuits are split on this issue and that cases such as United States v. Parodi, 703 F.2d 768 (4th Cir.1983), are to the contrary. This circuit has never squarely decided this issue.[3] One reason this circuit may have not previously decided this issue is that perhaps it should not be "squarely" decided if that means the adoption of a bright line test. This case is illustrative of the problem in dealing with this evidentiary question. Wagner and the government do not join issue in their briefs on this question. The government argues that criminal charges still hanging over James' head at the time of trial all occurred after he made the proffered prior consistent statements. The defendant argues that since James was on the DEA payroll at all times relevant he always had a motive to falsify. The defendant's argument proves too much. If the mere fact of an ongoing relationship is enough to keep prior consistent statements from being used to rehabilitate,[4] then this should apply equally to DEA agents themselves or to anyone who has any significant relationship to the case itself. Obviously, the rule is not this broad.
 
 
 31
 Without attempting to enunciate guidelines for all future cases we conclude here that the use of the prior consistent statements for rehabilitation purposes was proper. In reaching this conclusion we note, as pointed out by the government, that James' late brushes with the law were all subsequent to the debriefing statements at issue. We also note that the circumstances under which the statements were made add an indicia of reliability. This was not a case of someone making gratuitous statements at a time when they would be self-serving. Rather, these statements were made as part of a routinized procedure established by DEA for all informants. The statements made were contemporaneous with the event and they were required to be made. Under such circumstances they meet the requirements of Fed.R.Evid. 801(d)(1)(B) as well as satisfying any relevancy requirements which may be involved.
 
 
 32
 Here again we find no abuse of discretion on the part of Judge Gilmore.
 
 VI.
 
 33
 The Alleged Variance Between the Indictment and Proof at Trial
 
 
 34
 Wagner's argument here, reduced to its essential, is that the government charged only one conspiracy but proved multiple conspiracies. Kotteakas v. United States, 328 U.S. 750 (1946). This argument is easy to make but difficult to prove particularly in narcotics conspiracies. It is not unusual for a person such as Wagner who is dealing in narcotics to have several sources of supply and several channels of distribution. It is not necessary that all involved know each other or even participate at the same time. The degree of involvement may range from significant to unsubstantial as may the period of involvement. These principles of conspiracy law are too well known to merit further discussion. Suffice it to say that, here, the duration of the conspiracy alleged in the indictment was relatively brief--February, 1985 to September, 1985. The alleged conspirators not only knew each other but in many instances were actually related. The testimony of James, who likewise was related to some of the participants, provides a unifying thread showing the continuous and unified nature of the conspiracy charged.
 
 
 35
 We find no variance between the indictment and the proofs and AFFIRM.
 
 WELLFORD, Circuit Judge concurring:
 
 36
 I concur in the decision to affirm the convictions of the defendants. I write separately, however, to set out my concern that the testimony relating to the planning of a trip by Canales and James to Texas should not have been admitted into evidence under all of the doubtful circumstances conceded by Judge Guy to be "thin" and of a "questionable nature."
 
 
 37
 I would hold that the error in admitting this testimony, even if it were deemed relevant, was harmless in view of the totality of the proof in this case. The evidence is clear and convincing of the drug conspiracy and drug activities, as charged, of defendants Wagner and Hall. I would therefore affirm the judgment of the district court despite the harmless error committed in allowing a part of the testimony described in Part III of the majority opinion.
 
 
 
 [1]
 Wagner was also charged in other counts not relevant to our discussion of the appeal issue raised here. Wagner and Hall were both found guilty of the Count I conspiracy charge. Hall, but not Wagner was found guilty on the Count II aiding and abetting charge. Wagner was found guilty also of both substantive distribution counts. Hall was acquitted on the two retaliation charges
 
 
 [2]
 There is little doubt that James, like many confidential informants, was an unsavory character with a criminal record. However, his credibility was for the jury and is not before us on appeal
 
 
 [3]
 The issue has been discussed, however, in cases such as United States v. LeBlanc, 612 F.2d 1012 (6th Cir.), cert. denied, 449 U.S. 849 (1980), and United States v. Hamilton, 689 F.2d 1262 (6th Cir.1982), cert. denied sub nom., 459 U.S. 1117 (1983)
 
 
 [4]
 We are not addressing here as the court did in Quinto the issue of prior consistent statements as substantive evidence